UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/30/2026

WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF BMO 2024-C10 MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2024-C10 AND THE UNCERTIFICATED INTEREST OWNERS,

Plaintiff,

v.

PHILIP W. CYBURT and SPENCER C. ATKINS,

Defendants.

Case No. 1:26-cv-2817

STIPULATED ORDER

**PROTECTIVE ORDER REGARDING CONFIDENTIAL INFORMATION, RULE 502(d) PROTECTION, ELECTRONICALLY-STORED INFORMATION, AND THE PRODUCTION OF PRIVILEGE LOGS**

Pursuant to Federal Rule of Civil Procedure 26(c), this Protective Order Regarding Confidential Information, Rule 502(d) Protection, Electronically-Stored Information, and the Production of Privilege Logs shall govern the parties in the above-captioned case unless modified by further Order of the Court.

Unless otherwise agreed to by the Producing Party (defined below), Discovery Material (defined below) shall be utilized by the Receiving Party (defined below) and its counsel only for purposes of this litigation and for no other purposes.

**Protocol for Confidential Information**

A. Definitions

1. "Action" shall mean the case captioned *Wilmington Savings Fund Society, FSB, as Trustee for the Benefit of the Registered Holders of BMO 2024-C10 Mortgage Trust,*

*Commercial Pass-Through Certificates, Series 2024-C10 and the Uncertificated Interest Owners v. Cyburt, et al.*, Case No. 1:26-cv-02817.

2. "Confidential Information" shall mean information that, at the time of its production in discovery in the action, or thereafter, is designated confidential by the Producing Party because of a good faith belief that the information: is not in the public domain, or if in the public domain, is improperly in the public domain; and (i) is a trade secret or other confidential research, development, or commercial information as such terms are used in Fed R. Civ. P. 26(c); (ii) competitively sensitive information or other information the disclosure of which would, in the good faith judgment of the Producing Party or, as appropriate, non-party designating the material as confidential, be detrimental to the conduct of that Producing Party's or non-party's business or the business of any of that Producing Party's or non-party's customers or clients; (iii) personal financial, medical or other private information relating to an individual that would properly be redacted from any public court filing pursuant to Fed. R. Civ. P. 5.2; or (iv) information that the Producing Party otherwise believes in good faith to be entitled to protection under applicable law.

3. "Highly Confidential Information—Attorneys Eyes Only" shall mean and "Confidential Information" that is of such a private, sensitive, competitive or proprietary nature that present disclosure to persons other than attorneys would reasonably be expected to cause irreparable harm or materially impair the legitimate competitive position or interests of the Designating or Producing Party. A designation of Confidential Information as Highly Confidential Information—Attorney's Eyes Only" constitutes a representation that such Confidential Information has been reviewed by an attorney for the Designating Party or Producing Party and that there is a valid basis for such a designation.

4. "Disclose" (or forms thereof) shall mean to distribute, provide, or otherwise make available for viewing, or copying. "Disclose" shall include the actual covered document or item as well as the contents or information contained therein, such that disclosing a copy, summary, paraphrasing, or characterization would be considered a disclosure of the document itself for purposes of this Protective Order.

5. "Document" shall mean all items listed in Fed. R. Civ. P. 34(a)(1)(A) & (B).

6. "Discovery Material" shall mean all Documents and Testimony, and all information contained therein, that are provided, produced, or generated in disclosures or in response to requests in this action. This includes but is not limited to information received through formal discovery conducted pursuant to the Federal Rules, as well as information gathered through informal requests or communications between the parties or their counsel.

7. "Challenging Party" shall mean any party who challenges the designation of information as Confidential Information under this Protective Order.

8. "Designating Party" shall mean the party or other person producing in discovery in the Action any information that the Producing Party seeks to designate and have treated as Confidential Information pursuant to this Protective Order.

9. "Producing Party" shall mean the parties to this action and any non-parties producing "Confidential Information" or "Highly Confidential-Attorney's Eyes-Only Information" in connection with depositions, document production or otherwise, or the Party or non-party asserting the confidentiality privilege, as the case may be.

10. "Receiving Party" shall mean any party who receives information that has been designated as Confidential Information.

B. Purpose, Scope, and Limitations of Protective Order

1. This Protective Order applies to discovery, pre-trial and (to the extent approved by the Court) post-trial proceedings in this action, whether the Documents are produced by a party or a person or entity who is not a party to this action (a "non-party"). This Order binds (a) the Parties and their respective agents, successors, personal representatives, and assignees; and (b) any non-party signatories of Exhibit A to this Protective Order.

2. This Protective Order shall not prejudice in any way any party's ability to challenge the use or disclosure of information other than information designated as Confidential Information under this Protective Order in this Action. A party's compliance with the terms of this Protective Order shall not operate as an admission that any particular material is or is not (a) confidential, (b) privileged, or (c) admissible in evidence at trial.

3. The protections conferred by this Protective Order do not cover any information (a) properly in the public domain; (b) becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Protective Order including becoming part of the public record in this Action through trial or otherwise; or (c) known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Producing Party.

4. Notwithstanding Paragraph 1, this Protective Order does not govern the use by the Parties of Confidential Information in open court at any hearing or trial, but the Parties reserve the right to seek relief from the Court in connection with the intended use of Confidential Information in any such hearing or trial.

5. This Protective Order governs the disclosure, use, and handling of all Confidential Information, regardless of the format or medium in which such Confidential Information is generated, stored, or maintained.

6. Any Confidential Information referenced in any pleading or contained in any Document filed with the Court in this Action by the Producing Party shall at the time of filing cease to be Confidential Information unless the Producing Party files the un-redacted pleading or Document under seal.

7. Nothing in this Protective Order shall restrict the right of any Producing Party to use its own Confidential Information for any purpose whatsoever but if any such use results in a disclosure that causes the Confidential Information to lose its designation as Confidential Information, then it shall no longer be subject to any protection under this Protective Order.

8. This Protective Order applies only to disclosures, uses, and handling of Confidential Information occurring after the entry of this Protective Order.

9. Neither the termination of this Action nor the termination of employment of any person who has had access to any Confidential Information shall relieve such person of his or her obligations under this Protective Order, which shall survive.

10. Any party may at any time seek modification of this Order by motion to the Court.

C. Method for Designating Confidential Information

1. Designations of Confidential Information shall be made by the Producing Party, prior to or at the time of production, except as otherwise provided by this Protective Order.

2. The designation of Confidential Information should be limited only to those Documents or portions of Documents that qualify under the appropriate standards or under the definitions of "Confidential Information" in Section A(2) of this Protective Order.

3. Documents produced in discovery in this Action may be designated as containing "Confidential Information." For documents produced in paper or an electronic form that allows endorsements or similar designation on the image, the designation shall appear by the inclusion of the marking of "Confidential, Subject to Protective Order" on each page of the document asserted to contain Confidential Information. For electronic information that is provided in native form or a format that is not amenable to visible endorsement on the image, the file name(s) shall begin with "Confidential, Subject to Protective Order." The media on which the Confidential Information is provided (e.g., CD, DVD, external hard drive) also must be and remain plainly labeled with the following: "Confidential, Subject to Protective Order," unless and until the protection of the data within the media is removed. Any copying or transferring of electronic files that are designated as Confidential Material must be done in a manner that maintains the protection for all copies, including, but not limited to, the filename(s) and the location where the copies are stored and access thereto.

4. For interrogatory answers and responses to requests for admission, designation of Confidential Information shall be made by placing within each interrogatory answer or response to requests for admission asserted to contain Confidential Information the following: "Confidential, Subject to Protective Order."

5. For depositions, designation of Confidential Information shall be made (a) during the deposition on the record that should include reasons for the assertion, or (b) by

letter from counsel within fifteen (15) days of receipt of the official deposition transcript or copy thereof (or written notification that the transcript is available), listing the specific pages and lines of the transcript and/or any exhibits that should be treated as Confidential Information. The entire deposition transcript (including any exhibits not previously produced in discovery in this Action) shall be treated as Confidential Information under this Protective Order until the expiration of the above-referenced 15-day period for designation, except that the deponent (and his or her counsel, if any) may review the transcript of his or her own deposition during the 15-day period subject to this Protective Order and the requirement of executing the certification attached as Exhibit A. After designation of Confidential Material is made, the following shall be placed on the front of the original and each copy of a deposition transcript containing the Confidential Information: "Confidential, Subject to Protective Order." If the deposition was filmed, both the recording storage medium (i.e. CD or DVD) and its container shall be labeled "Confidential, Subject to Protective Order."

6. For any other Document or item produced in discovery in this Action not falling within subparagraphs C(3), (4) or (5) above, designation of Confidential Information shall be made by labeling the item or the item's contained with "Confidential, Subject to Protective Order." If only a portion or portions of the information contained in the item warrant protection as Confidential Information, it shall be accompanied by a cover letter identifying the specific portion or portions so designated.

D. Challenging Confidential Designations

1. A Challenging Party shall not be obliged to challenge the propriety of a Confidential Information designation at the time made, and a failure to do so shall not preclude a subsequent challenge thereto.

2. The Challenging Party shall initiate any challenge to the designation of any Confidential Information under this Protective Order by providing to the Designating Party (a) written notice of each designation it is challenging and (b) a description of the bases of each challenge.

3. The Challenging Party and the Designating Party shall attempt to resolve each challenge in good faith and must begin a meet and confer process within seven (7) calendar days after the Designating Party receives notice from the Challenging Party. During the conferring process, the Challenging Party must convey its basis for the challenge and the Designating Party must have an opportunity to review the applicable documents and decide whether to keep or change the designation. The Designating Party must communicate its decision(s) to the Receiving Party within fourteen (14) days after receipt of notice of the challenge, or within a reasonable time agreed to by the Parties.

4. If the Designating Party decides to withdraw its designation, it shall give notice of this change to all parties.

5. If the Challenging and Designating Parties cannot come to a resolution within the time set forth in paragraph D(3) above, or as otherwise agreed, either Party may file a motion seeking a determination from the Court.

6. Any information designated as Confidential Information pursuant to and after the entry by the Court of this Protective Order shall be treated as Confidential

Information until such time as (a) the Designating Party decides to withdraw its Confidential Information designation or (b) the Court rules that such information should not be treated as Confidential Information.

E. Disclosure, Use and Handling of confidential Information

1. A Receiving Party may use Confidential Information, in connection with this Action, including any appeal and mediation, only for prosecuting, defending, or attempting to settle this Action, and shall disclose such Confidential Information only in accordance with the terms of this Protective Order.

2. Counsel of record is responsible for employing reasonable measures, consistent with this Protective Order, to control access to and secure distribution of Confidential Information.

3. Confidential Information shall only be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part to the following persons:

a. Counsel (including outside counsel) for the Parties, including associated personnel necessary to assist counsel in this Action, such as litigation assistants, paralegals, and litigation support, information technology, information or records management, investigative, secretarial, or clerical personnel;

b. Current employees of the Parties who are assisting with respect to this Action;

c. Any person with prior authorized access to Confidential Information;

d. Current employees of the Producing Party;

e. Witnesses, potential witnesses, and deponents, including their counsel, provided they sign the attached Declaration to be bound;

f. Court reporters and other persons not employed by this Court, retained to record or transcribe testimony or argument at interviews or depositions in connection with this Action;

g. Photocopying, data processing, and other support services that are reasonably necessary to litigation in this Action;

h. Expert witnesses and consultants retained in this Action, provided they sign the attached Declaration to be bound;

i. Mediators or arbitrators retained in this Action; and

j. This Court (including any judicial officer to whom this Court may refer this matter for settlement purposes), jurors, and Court personnel, including persons recording or transcribing testimony or argument at a conference, hearing, trial, or appeal in this Action.

4. Confidential Documents may be shown to persons referenced in subsection (E)(3)(h) (consultants and experts) who are assisting in the preparation of this action on the condition that, before disclosing any confidential information, the disclosing party obtain an agreement in writing to be bound by the provisions of this Protective Order (in the form of Exhibit A hereto).

5. Persons receiving Confidential Information pursuant to the terms of this Protective Order are prohibited from disclosing it to any person except in conformance with this Protective Order.

6. Unless the Designating Party gives written permission, all Confidential Information that is filed with the Court must be (a) filed under seal or in camera in accordance with all local and judge's rules and procedures and/or (b) redacted from any filing that is publicly available.

7. If a Receiving Party or anyone subject to this Protective Order receives a subpoena under Fed. R. Civ. P. 45 (or any equivalent mechanism under state law) seeking Confidential Information as designated in this action, the Receiving Party or such individual shall promptly notify the Designating Party and shall not disclose any Confidential Information until the Designated Party has had a reasonable opportunity to inform the subpoenaed person either (a) the Designated Party does not object to the production of the Confidential Information or (b) that the Designated Party will seek appropriate relief or protection from the proper Court to prevent the production. The Designating Party shall bear the burden and expense of seeking protection of its designated Confidential Information, and nothing in this Protective Order should be construed as authorizing or encouraging a subpoenaed person to disobey a lawful directive from this or another court.

F. <u>Inadvertent Production of Confidential Information</u>

1. Nothing herein shall be deemed or construed as a waiver of any applicable privilege, right of privacy, or proprietary interest with respect to any information or item. The Parties agree to follow Fed. R. Civ. P. 26(b)(5)(B) with respect to any inadvertently or unintentionally produced or disclosed Confidential Information.

2. If a Receiving Party learns that, by inadvertence or otherwise, it, or a person to whom it has disclosed Confidential Information in accordance with this Protective

Order, has disclosed Confidential Information to any person or in any circumstance not authorized under this Protective Order, the Receiving Party shall, upon learning of the unauthorize disclosure: (a) promptly notify the person(s) to whom the unauthorize disclosure was made that the unauthorized disclosure contains Confidential Information subject to this Protective Order; (b) promptly make all reasonable efforts to obtain the return of the Confidential Information and prevent further unauthorized disclosures of the Confidential Information, including requesting the person who received the unauthorized disclosure to agree to be bound by the terms of this Protective Order by executing a declaration in the form attached as “Exhibit A”; and (c) within five (5) calendar days to notify the Producing Party and all other Parties of the identity of the person(s) to whom the unauthorized disclosure was made, the circumstances surrounding the disclosure, and the steps taken to prevent any use or further disclosure of the Confidential Information that was the subject of the unauthorized disclosure.

G. <u>Disposition of Documents Containing Confidential Information</u>

1. Except as provided in this Protective Order, within 90 days of the final termination of this Action, whether by settlement, judgment, or other disposition or conclusion and all appeals or opportunities to appeal therefrom, a Receiving Party shall take reasonable steps either to (a) destroy or delete all items designated as Confidential Information or (b) return them to the Designated Party, depending upon the Designating Party’s stated reasonable preference, except materials that exist on back-up tapes or similar systems. Notwithstanding subsections (a) and (b), materials that exist on back-up tapes, systems, or similar storage need not be immediately deleted or destroyed, and, instead, such materials overwritten and destroyed in the normal course of business. Until they are

overwritten in the normal course of business, the Receiving Party will take reasonable steps to limit access, if any, to the persons necessary to conduct routine IT and cybersecurity functions. In the course of disposing information in its possession under this paragraph, Receiving Party also will take reasonable steps to notify persons to whom it distributed Confidential Information pursuant to this Order that such information should be returned to Receiving Party or destroyed by the person possessing the information with written confirmation to Receiving Party.

2. Notwithstanding the foregoing, nothing in this Order shall require the destruction of (a) any attorney work product, including but not limited to memoranda, correspondence (including electronic mail, whether sent or received), notes, case summaries, briefs, legal research, mental impressions, litigation strategy documents, or other materials prepared by or at the direction of counsel that refer to, discuss, summarize, excerpt, or otherwise reflect Confidential Information.

**Rule 502(d) Protection**

1. A Producing Party shall notify all Receiving Parties through their Outside Counsel in writing promptly upon learning of the inadvertent production or disclosure of any documents that it claims to be protected from discovery of disclosure, in full or in part, by the attorney-client privilege, the attorney work product doctrine, and/or any other additional privilege, immunity, or protection ("Privileged Material"). The Producing Party must also reproduce the documents subject to such claim with appropriate redactions if reasonably practicable.

2. Upon receipt of the noticed described in Paragraph 1, the obligations of the Receiving Party with respect to the documents that are the subject of the notice are set forth in Federal Rule of Civil Procedure 26(b)(5)(B). Accordingly, the Receiving Party (a) must return,

sequester, or destroy the specified documents any copies within ten (10) business days upon receipt of notice described in paragraph 1; (b) must not use or disclose the document until the claim is resolved; and (c) must take reasonable steps to retrieve the document if it was disclosed to others prior to receiving notice.

3. Whether inadvertent or otherwise, the disclosure or production of any Privileged Material will not be deemed to waive a Party's claim to its privileged or protected nature or estop that Party or the privilege holder from designating the information or document as Privileged Material at a later date. If the Receiving Party disclosed the Privileged Material before being notified of the inadvertent production, it must take reasonable steps to retrieve it. Disclosure of the information or document by the other Party prior to such later designation will not be deemed a violation of the provisions of this Order. Although the provisions of this section constitute an Order pursuant to Rule 502(d)-(e) of the Federal Rules of Evidence, and will be construed in a manner consistent with the maximum protection provided by these Rules of Evidence, nothing in this Order is intended or will be construed to limit a Party's right to conduct a review of documents, including electronically stored information, for relevance, responsiveness, or segregation of privileged or protected information before production.

**Protocol for Electronically-Stored Information**

4. Consistent with their obligations under Federal Rule of Civil Procedure 26(b), the parties have agreed to engage in a reasonable process of producing Electronically-Stored Information ("ESI"), including but not limited to, emails relevant to the claims and defenses in this action. The parties acknowledge that they have taken and will continue to take reasonable efforts to preserve documents and ESI reasonably likely to be discoverable in this action. The parties will produce responsive electronic documents identified in this process in the form agreed to by the

parties subject to any timely written objections pursuant to Rule 34 that are upheld by the Court if challenged.

5. Except as provided in paragraph 3, all ESI shall be produced in .TIFF image format. To the extent practicable, each individual document based on an electronic file shall be accompanied by a corresponding text file with text that is extracted from the electronic file, not generated as an OCR (optical character recognition) file from the .TIFF image(s). The Parties agree that ESI will be produced with limited, corresponding metadata. Specifically, the following metadata fields for each electronic document shall be produced, if available: Begdoc, Enddoc (or Begin Bates, End Bates), Begattach, Endattach, Custodian, Email From, Email To, Email CC, Email BCC, Date and Time Sent, Date and Time Received, Email Subject, File Name, Date and Time Last Modified, Date and Time Created, File Type, Has Redactions, Author, File Extension, Title, and Time Zone. This list of metadata fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI. The producing party will take reasonable steps to produce relevant, non-privileged attachments to electronic documents contemporaneously and in sequential order. To the extent attachments to electronic documents cannot be produced contemporaneously and in sequential order, despite the good faith efforts of the producing party to do so, the receiving party will notify the producing Party of the missing attachment(s) and the producing Party will make a good faith effort to locate the attachment(s) in question either within the documents produced or elsewhere. Each page of a produced document shall have a legible, unique page identifier ("Bates Number"), and confidentiality legend (where applicable), on the face of the image at a location that does not interfere with the information from the source document.

6. Microsoft Excel and other types of spreadsheets ("Spreadsheets"), and PowerPoint or other form of presentation files ("Presentations"), are often dynamic in nature and may not be conducive to static images; therefore, the parties shall produce a single slipsheet for Spreadsheets and Presentations as an image with a unique Bates Numbers along with their native form(s) labeled with the same Bates Number, unless it is not technically feasible to do so.

7. If a document produced in native format has password protection or an encryption key, the parties will make reasonable efforts to locate the applicable passwords/keys, and if located, to provide them with the associated document bates number.

8. ESI shall be produced via attachment to email or via transmitting ESI on a secure web-based site. Each image shall be assigned a production number with a prefix sufficient to identify the producing party. With each production, the producing party shall provide .opt and .dat files or similar industry standard load files. The .dat file should include the metadata fields referenced in paragraph 4. The Producing Party will assign and track industry standard hash values (e.g., MD5 or SHA) for electronic documents produced in native format.

9. The Parties are not required to produce exact duplicates of electronic documents stored in different locations and may globally de-duplicate identical ESI.

10. Parent-child relationships for all parent emails with attachments and embedded ESI documents (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields. For example, if a party is producing an email with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email. In the event that a child is not

produced on privilege or other grounds, it shall be identified by a Bates numbered slip sheet indicating that the document was withheld and the reason why (privilege, work product, etc.).

11. Absent subsequent agreement by the parties or Court Order to the contrary, each party will bear the costs of making its ESI production, including collection, extraction, processing and exporting for production.

12. Any of these terms may be modified by writing reflecting the agreement of both parties or by the Court upon a motion by either party demonstrating good cause.

**<u>Protocol for Exchange of Privilege Logs</u>**

Privilege logs shall be produced pursuant to all requirements of Local Civil Rule 26.2(c) of the Local Civil Rules for the U.S. District Courts for the Southern and Eastern Districts of New York and Fed. R. Civ. P. 26(b)(5)(A), that at a minimum identify: (a) the names of every of every party to the document or communication; (b) the date of that document or communication; (c) the specific privilege claimed to be applicable; (d) a description of the nature of the document or communication, adequate to enable the other Parties to assess the validity of the privilege claim; and (e) the Begin and End Bates of the document or other numeric pre-production identifier for the document. The parties agree that they are not required to log on their privilege logs documents created after the date of the original Motion for Summary Judgment in Lieu of Complaint that were exchanged between a party (or an agent thereof) and their respective in-house counsel or outside litigation counsel.

**SO ORDERED:**

**Dated: July 30, 2026**
**New York, New York**

______________________________

**VALERIE CAPRONI**
**United States District Judge**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF BMO 2024-C10 MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2024-C10 AND THE UNCERTIFICATED INTEREST OWNERS,<br><br>Plaintiff,<br><br>v.<br><br>PHILIP W. CYBURT and SPENCER C. ATKINS,<br><br>Defendants. | Case No. 1:26-cv-2817 |

**DECLARATION**

1. My name is ______________________________________________.

2. I have read the Protective Order that has been entered in this case, and a copy of it has been given to me. I understand the provisions of the Protective Order, and agree to comply with and to be bound by its provisions. I also consent to the jurisdiction of this Court for the purposes of enforcement of the Protective Order.

3. I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of ____________ by ______________________________
(Print Name)

Signed ________________________